Joel B. Rothman (*Pro Hac Vice*)
Eliezer Lekht (*Pro Hac Vice*)
SRIPLAW
125 Maiden Lane
Suite 5C
New York, NY 10038
561.404.4350 – Telephone
561.404.4353 – Facsimile
Joel.rothman@sriplaw.com
eliezer.lekht@sriplaw.com
*Attorneys for Plaintiff VPR Brands, LP*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**
**PHOENIX DIVISION**

| | |
|---|---|
| VPR Brands, LP, | No. CV-20-02185-PHX-DJH |
| Plaintiff/Counterclaim Defendant, | **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO STAY** |
| v. | |
| Jupiter Research, LLC, | |
| Defendant/Counterclaim Plaintiff. | |

# TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................1

I.   STATEMENT OF FACTS ....................................................................2

   A. VPR.............................................................................................2

   B. Jupiter.........................................................................................2

   C. Procedural history .....................................................................3

   D. The Patent in Suit .....................................................................4

   E. Patent Infringement ..................................................................5

II.  STANDARD OF REVIEW ..................................................................6

III. ANALYSIS ..........................................................................................7

   A. Jupiter's motion to stay is premature; the IPR has not been instituted therefore a stay is not warranted. ...........................................................................7

     1.   Jupiter's IPR petition is time-barred under 35 U.S.C. §315(b)......................9

     2.   The IPR petition was unreasonably delayed and is being used as a strategic weapon to derail this litigation. ................................................10

   B. A stay will unduly prejudice VPR and present a clear tactical disadvantage to VPR.............................................................................................11

   C. A Stay will not simplify issues in question......................................13

   D. This case has progressed significantly towards trial ...........................14

   E. The IPR petition fails to provide prior art that raises a reasonable likelihood that Jupiter would prevail with respect to at least one of the challenged claims, and will not be instituted on the merits.................................................................16

     1.   Cox discloses a "control device" that operates in conjunction with a separate timer, remote control, and a user-actuated button .........................................17

     2.   Hon discloses a microcontroller that operates in conjunction with a separate MOFSET electric circuit board.........................................................17

ii

3.  Zhu discloses the use of a "pressure chamber" and an integrated circuit that operates in conjunction with a separate MOFSET ............................................18

4.  Fleischhauer is not an electronic cigarette, and fails to disclose the atomizer, and single-chip microcontroller of the '622 patent ............................................18

IV.  CONCLUSION .........................................................................................................19

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page(s)

Cases

*Acumed LLC v. Stryker Corp.*,
  551 F.3d 1323 (Fed. Cir. 2008) ......................................................................12

*ADA Solutions, Inc. v. Engineered Plastics, Inc.*,
  826 F. Supp. 2d 348 (D. Mass. 2011)..............................................................12

*Amkor Tech., Inc. v. Tessera, Inc.*,
  No. IPR2013-00242, Paper No. 98, slip op. at 9, 2014 WL 2864151 (P.T.A.B. Jan. 31,
  2014)..................................................................................................................9

*Automatic Mfg. Systems, Inc. v. Primera Technology, Inc.*,
  2013 WL 1969247 (M.D. Fla. 2013)...........................................................8, 14

*Avago Techs. Fiber IP Pte. Ltd. v. IPtronics Inc.*,
  No. 10-CV-02863-EJD, 2011 WL 3267768 (N.D. Cal. July 28, 2011) .......................12

*Avanos Med. Sales, LLC v. Medtronic Sofamor Danek USA, Inc.*,
  No. 219CV02754JMPTMP, 2020 WL 7865959 (W.D. Tenn. Nov. 24, 2020) ...........14

*CANVS Corp. v. United States*,
  118 Fed. Cl. 587 (2014)......................................................................................7

*Click-To-Call Techs., LP v. Ingenio, Inc., YellowPages.com, LLC*,
  899 F.3d 1321 (Fed. Cir. 2018) .........................................................................9

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
  2015 WL 2454296 (E.D. Va. 2015) ...................................................................8

*Coffey v. Van Dorn Iron Works*,
  796 F.2d 217 (7th Cir.1986)............................................................................13

*Comcast Cable Commc'ns Corp., LLC v. Finisar Corp., No. C*,
  06–04206 WHA, 2007 WL 1052883 (N.D. Cal. Apr. 5, 2007) .................................15

*Cuozzo Speed Techs., LLC v. Lee*,
  136 S. Ct. 2131 (2016) .......................................................................................8

*Davol, Inc. v. Atrium Medical Corp.*,
  2013 WL 3013343 ............................................................................................12

*Drink Tanks Corp. v. GrowlerWerks, Inc.*,
2016 WL 3844209 (D. Or. 2016) ..............................................................................7

*Endotach LLC v. Cook Medical Inc.*,
2014 WL 301498 (S.D. Ind. 2014)............................................................................8

*Esco. Corp. v. Berkeley Forge & Tool, Inc.*,
No. 09–1635, 2009 WL 3078463 (N.D.Cal. Sept.28, 2009)....................................13

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1988) .........................................................................6, 14

*Everlight Elecs. Co. v. Nichia Corp.*,
No. 12–cv–11758, 2013 WL 1821512 (E.D. Mich. Apr. 30, 2013) ...............12, 13, 14

*Fujitsu Ltd. v. Netgear, Inc.*,
2008 WL 2540602 (W.D.Wis. Apr. 4, 2008).........................................................13

*Gladish v. Tyco Toys, Inc.*,
1993 WL 625509 (E.D. Cal. 1993) .......................................................................14

*Henderson v. United States*,
517 U.S. 654 (1996) ...........................................................................................10

*Hy Cite Corp. v. Regal Ware, Inc.*,
2010 WL 2079866 (W.D.Wis. May 19, 2010)........................................................13

*ImageVision.Net, Inc. v. Internet Payment Exchange, Inc.*,
2013 WL 1743854 (D. Del. 2013) ..........................................................................8

*Intellectual Ventures II LLC v. FedEx Corp.*,
No. 2:16-CV-00980-JRG, 2017 WL 4812434 (E.D. Tex. Oct. 24, 2017) ...................16

*Landis v. North American Co.*,
299 U.S. 248 (1936) .............................................................................................6

*National Products Inc. v. Gamber-Johnson LLC*,
2021 WL 4168335 (W.D. Wis. 2021) ......................................................................8

*Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*,
No. A–12–CA–773–SS, 2013 WL 6097571 (W.D. Tex. June 7, 2013) ......................15

*Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*,
2015 WL 11439060 n.8 (E.D. Tex. Jan. 5, 2015) .....................................................13

v

*Nexans Inc. v. Belden Inc.*,
    2014 WL 651913 (D. Del. 2014) .................................................................8

*Nken v. Holder*,
    556 U.S. 418 (2009) .................................................................................1, 6

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*,
    467 F.3d 1355 (Fed. Cir. 2006) ................................................................11

*Ohio Environmental Council v. United States District Court*,
    565 F.2d 393 (6th Cir. 1977) ......................................................................6

*Output Technology Corp. v. Dataproducts Corp.*,
    1991 WL 332547 (W.D. Wash. 1991) ......................................................12

*Peloton Interactive, Inc. v. Flywheel Sports, Inc.*,
    No. 218CV00390RWSRSP, 2019 WL 3826051 (E.D. Tex. Aug. 14, 2019) ...............8

*Pragmatus Mobile, LLC v. Amazon.com, Inc.*,
    No. CV 14-436-LPS, 2015 WL 3799433 (D. Del. June 17, 2015) ..............................11

*Procter & Gamble Co. v. Team Techs., Inc.*,
    No. 1:12-CV-552, 2014 WL 533494 (S.D. Ohio Feb. 11, 2014) ..................................7

*Realtime Data LLC v. Actian Coporation*,
    No. 6:15-CV-463-RWS-JDL, 2016 WL 3277259 (E.D. Tex. June 14, 2016).............11

*Rensselaer Polytechnic Institute v. Apple Inc.*,
    2014 WL 201965 (N.D.N.Y. 2014)..............................................................8

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*,
    No. SACV 12–21–JST (JPRx), 2012 U.S. Dist. LEXIS 186322, at *3–4 & n. 1 (C.D. Cal. Dec. 19, 2012)........................................7

*Sierra Pac. Indus. v. Kolbe & Kolbe Millwork Co.*,
    2019 WL 1924836 (W.D. Wis. Apr. 30, 2019)............................................8

*Streak Prods., Inc. v. Antec, Inc.*,
    No. C09–04255 RS (HRL), 2010 WL 3515752 (N.D. Cal. Sept. 8, 2010).................11

*Tesco Corp. v. Weatherford Int'l, Inc.*,
    599 F. Supp. 2d 848 (S.D. Tex. 2009)........................................................12

*TPK Touch Solutions, Inc v. Wintek Electro-Optics Corporation*,
    2013 WL 6021324 (N.D. Cal. 2013)...........................................................11

**SRIPLAW**

CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

*Trover Grp., Inc. v. Dedicated Micros USA*,
    No. 2:13-CV-1047-WCB, 2015 WL 1069179 (E.D. Tex. Mar. 11, 2015) ....................8

*TruePosition, Inc., v. Polaris Wireless, Inc.*,
    No. CV 12-646-RGA/MPT, 2013 WL 5701529 (D. Del. Oct. 21, 2013) ..............11, 15

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
    943 F. Supp. 2d 1028 (C.D. Cal. 2013) .............................................................7, 12, 15

*Unwired Planet, LLC v. Square, Inc.*,
    2014 WL 4966033 (D. Nev. 2014) .................................................................................8

*Viskase Corp. v. Am. Nat'l Can Co.*,
    261 F.3d 1316 (Fed. Cir. 2001) ....................................................................................7

West v. Jewelry Innovations, Inc.,
    2008 WL 4532558, at *3 (N.D. Cal. Oct. 8, 2008) ......................................................11

*Xerox Corp. v. 3Com Corp.*,
    69 F. Supp. 2d 404 (W.D.N.Y. 1999) ......................................................................7, 15

Statutes

35 U.S.C. § 314(a) ................................................................................................................8

35 U.S.C. § 316..........................................................................................................13, 15

35 U.S.C. § 316(a)(11) (2014) ...........................................................................................16

35 U.S.C. §315(b) ...........................................................................................................1, 9

Rules

Fed. R. Civ. P. 1 .................................................................................................................15

Regulations

37 C.F.R. § 42.100(c) (2016) .............................................................................................16

## I.    INTRODUCTION

Plaintiff, VPR BRANDS, LP, ("VPR") files this response and the accompanying Declarations of Eliezer Lekht ("Lekht Decl.") and Kevin Frija ("Frija Decl.") in opposition to defendant, Jupiter Research, LLC's ("Jupiter") motion to stay the case (ECF 30) pending an *Inter Partes Review* ("IPR") filed on December 20, 2021.

Jupiter's motion fails to "show[ ] that the circumstances justify" a stay. *Nken v. Holder,* 556 U.S. 418, 433–434 (2009). ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.") Jupiter failed to meet its burden to show the circumstances justify a stay. Jupiter's motion to stay litigation pending the resolution of the IPR should be denied.

Jupiter's motion is premature. Jupiter's IPR has not been instituted. The Patent Trial and Appeal Board ("PTAB") is unlikely to institute the IPR. The IPR is deficient both procedurally and on the merits.

Jupiter's motion is a delay tactic. Jupiter wants to avoid its discovery obligations and avoid summary judgment in this matter. The matter is far along and discovery will be completed soon. The parties already completed substantial discovery. Jupiter's corporate representative was deposed.

The parties agreed on claim construction. (ECF 29). The Parties agreement eliminated the need for a Markman hearing. This case is not "in its infancy." A stay does not advance the efficient, speedy, and just adjudication of this simple patent dispute.

Jupiter's IPR petition is untimely and time-barred. Jupiter filed the IPR "more than 1 year after the date on which [Jupiter] [was] served with a complaint alleging infringement of the patent." 35 U.S.C. §315(b). Jupiter was served in this case on December 15, 2020. Jupiter waited more than a year to file the IPR on December 21, 2021.

Jupiter is engaged in gamesmanship. Jupiter's invalidity contentions were due May 3, 2021. Jupiter's invalidity contentions and discovery responses identified only one

**SRIPLAW**   CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

1

prior art reference. Jupiter waited until October of 2021 to supplement its invalidity contentions and add two more prior art references. But in its IPR petition filed in December, Jupiter cited four references. Jupiter withheld the final reference and failed to disclose it timely. Jupiter's failure to timely disclose all of its invalidity references and the basis for its invalidity claims is bad faith.

Finally, Jupiter's IPR petition is substantively deficient and will be denied. The petition fails to disclose prior art that teaches one or more elements of U.S. Patent No. 8,205,622 ("the '622 patent" or "the patent-in-suit").

Under the totality of the circumstances a stay in this case is not justified. The Court should not reward Jupiter's gamesmanship. This is a simple infringement case that can be easily determined by this Court in a timely fashion. Jupiter's motion for a stay should be denied.

## I.    STATEMENT OF NECESSARY FACTS

### A. VPR

1.    VPR Brands, LP, is a technology company. VPR develops innovative products for the vapor or vaping market, including e-liquids, vaporizers and electronic cigarettes (also known as e-cigarettes).  E-cigarettes are devices that deliver nicotine and/or cannabis and cannabidiol (CBD) through atomization or "vaping." (ECF 1, ¶ 8).[1] VPR's assets include issued U.S. and Chinese patents for atomization products. (ECF 1, ¶ 7).

2.    VPR owns all right, title, and interest in the patent-in-suit, United States Patent Number 8,205,622 ("the '622 Patent") titled "Electronic Cigarette." A copy of the '622 Patent is attached to the Lekht Decl. as Exhibit 1.

### B. Jupiter

3.    Jupiter sells vaporizer products for cannabis. Jupiter makes, uses, imports, offers for sale and sells at least 21 different electronic cigarette products that practice all

---

[1] VPR's website is publicly available at the following URL: https://vprbrands.com

the steps of at least one claim of the '622 Patent.

4.     One of Jupiter's products is known as LIQUID 6. LIQUID 6 is an electronic cigarette with a rechargeable battery that supplies electric power to an electronic inhaler. LIQUID 6 also includes an electric airflow sensor to detect air movement generated by a user's inhaling or puffing act. (ECF 1-2)

**C. Procedural history**

5.     On November 13, 2020, VPR filed the complaint alleging patent infringement in this case. (ECF 1).

6.     VPR sent Jupiter a request for Waiver of Service on November 19, 2020. Jupiter's counsel signed and returned the Waiver of Service on December 15, 2020. On December 21, 2020, VPR filed the Waiver of Service with the Court. (ECF 9).

7.     On January 19, 2021, Jupiter filed its answer and counterclaims. (ECF 11).

8.     The parties held their Rule 26 Conference and submitted a Joint Case Management Report on February 22, 2021. (ECF 17). On February 26, 2021, the Court entered a Scheduling Order, requiring the parties complete briefing claim construction in November, 2021. (ECF 19).

9.     VPR served its first set of discovery requests on February 22, 2021. VPR's Requests for Production ("RFP") No. 19 requested "documents and ESI concerning the…invalidity…of the patent-in-suit." VPR's RFP No. 20 requested "documents and ESI containing prior art to the patent-in-suit or that you contend would anticipate or otherwise render obvious any claim or claims of the patent-in-suit." (Lekht Decl. ¶ 7, Ex. 2).

10.    On April 13, 2021, Jupiter served its responses to VPR's RFP. Jupiter's responses to RFP No. 19 and 20 identified DEF000915-DEF001135 as responsive. (Lekht Decl. ¶ 9, Ex. 5). Documents DEF000915-DEF001135 disclosed U.S. Patent No. 8,375,957, titled *Electronic Cigarette* ("Hon").

11.    On October 5, 2021, Jupiter supplemented its discovery by disclosing two

additional prior art references Chinese Patent Application Publication No. CN 01104488Y ("Zhu"), and U.S. Patent No. 6,234,167, titled *Aerosol Generator and Methods of Making and Using an Aerosol Generator* ("Cox").

12.    On July 27, 2021, VPR took the deposition of Jupiter's Corporate representative, Jordan Walker, Director of Engineering at Jupiter Research. (Lekht Decl. ¶ 10).

13.    On November 22, 2021, VPR served its claim construction brief (ECF 27). On December 6, Jupiter filed its responsive claim construction brief. Jupiter's response agreed with VPR's constructions. (ECF 29). The parties filed an agreed order with the agreed upon constructions.

14.    On December 20, 2021, Jupiter filed its petition for IPR. (ECF 32-3). The IPR petition filed by Jupiter cited four prior art references: (1) Cox; (2) Hon; (3) Zhu; and (4) International Publication No. WO 98/171131 ("Fleischhauer"). Fleischhauer had never been disclosed by Jupiter previously.

15.    On December 27, 2021, Jupiter filed this motion to stay. (ECF 30).

**D. The Patent in Suit**

16.    The '622 Patent is straight-forward and non-complex. It discloses an electronic cigarette or vaporizing device consisting of an electronic inhaler and an electronic atomizer. (ECF 1, ¶ 11). The electronic inhaler contains a rechargeable or non-rechargeable power source such as a battery, which supplies electric power to the electronic inhaler. The inhaler includes an electric airflow sensor to detect air movement generated by a user's inhaling or puffing act. The sensor detects an airflow signal that is sent to a microcontroller (referenced as a "Single Chip Micyoco" in the '622 patent claims). The microcontroller instructs the electronic cigarette to supply electric power to the atomizer connected through an electric connector. (ECF 1, ¶ 12).

17.    The microcontroller allows for efficient and automatic controls of the entire vaporizing system with a single microcontroller that is activated by a user "puffing" on

the device. The microcontroller receives the input signal from the airflow sensor and provides an output signal that directly controls the vaporization process (by controlling the electrical current provided to the heating element that vaporizers the e-liquid inside). ('622 Patent, col. 3, ln. 25-40).

18.    The user inhales through the air puffing hole at an end of the electronic cigarette to create an air inflow, which is detected by the airflow sensor that in-turn triggers the microcontroller, and the atomization process converts a solution to a gas simulating the smoking process. (ECF 1, ¶ 13).

19.    Claim 13 of the '622 Patent claims:

> An electronic cigarette comprising a tubular electronic inhaler and a tubular electronic atomizer, wherein the electronic inhaler includes an electric power source that provides an electric current to the electronic atomizer, the electronic cigarette further comprising an electric airflow sensor that is used to turn on and off the electric power source by way of detecting an airflow and sending a signal to a Single Chip Micyoco, wherein the Single Chip Micyoco receives the signal from the electric airflow sensor, instructs the electric power source to send an electric current to the electronic atomizer, and a time period and a magnitude of the electric current.

'622 Patent, Claim 13.

20.    The microcontroller of the present invention integrates all of the circuit controls (a circuit board and CPU) on a single chip. As described in the '622 Patent,

> Referring to FIG. 1…The electric sensor 6 plays the role of detecting the airflow resulted from the puffing action of a user, and wakes up the single chip micyoco 3 to tum on the electricity on/off switch 4 and generate an electric current form the electric power source 5 to the electronic atomizer 22 for vaporizing of a liquid inside the liquid chamber inside the atomizer 22. The single chip micyoco 3 instructs the electric power source 5 to supply electricity to the system by its 15 2 embedded computer programs when a signal is generated through the airflow detected by the electric sensor 6 from the user's puffing action.

('622 Patent, col. 4, ln. 7-22).

**E. Patent Infringement**

21.    Jupiter's products contain an electronic atomizer with an electric connector, electric heating wire, liquid container, and atomizer cap with an air-puffing hole. To operate Jupiter's devices, a user inhales through the air puffing hole which triggers an airflow sensor, which sends a signal to the microcontroller, which in-turn sends a signal to initiate the atomization process that converts a solution from liquid to gas, simulating the smoking process. (ECF 1, ¶¶ 19-20).

22.    Jupiter's unauthorized, infringing use of VPR's patented electronic cigarette has threatened the value of VPR's intellectual property because Jupiter's conduct results in VPR's loss of its lawful patent rights to exclude others from importing, making, using, selling, offering to sell and/or importing the patented invention. (ECF 1, ¶ 24).

**II.    STANDARD OF REVIEW**

A decision to stay litigation lies within the sound discretion of the Court and represents an exercise of its "inherent [power] to control the disposition of the cases on its docket." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). This analysis "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* This authority extends to patent cases in which a review by the PTO has been requested. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination").

"The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Holder,* 556 U.S. at 433–34. In exercising this power, "a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Environmental Council v. United States District Court*, 565 F.2d 393, 396 (6th Cir.

1977). Similarly, when a stay is sought because of co-pending PTO reexamination proceedings, district courts are not required to stay judicial resolution pending reexamination. See, e.g., *Viskase Corp. v. Am. Nat'l Can Co.*, 261 F.3d 1316, 1328 (Fed. Cir. 2001).

In determining whether to stay a patent action pending PTO reexamination proceedings, courts generally weigh three factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Tdata Inc. v. Aircraft Technical Publishers,* No. 2:03–cv–264, 2:04–cv–1072 (S.D. Ohio Jan. 4, 2008) (citing *Xerox Corp. v. 3Com Corp.,* 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)); see also *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.,* No. SACV 12–21–JST (JPRx), 2012 U.S. Dist. LEXIS 186322, at *3–4 & n. 1 (C.D. Cal. Dec. 19, 2012).

However, courts are not restricted to considering just these three factors; rather, the decision should be based upon the totality of the circumstances. *Universal Elecs., Inc. v. Universal Remote Control, Inc.,* 943 F. Supp. 2d 1028, 1031 (C.D. Cal. 2013). *Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-CV-552, 2014 WL 533494, at *1-2 (S.D. Ohio Feb. 11, 2014). In deciding how best to exercise this inherent power, the court must weigh competing interests and maintain an even balance." *Drink Tanks Corp. v. GrowlerWerks*, Inc., 2016 WL 3844209, *2 (D. Or. 2016).

## III.   ANALYSIS

### A. Jupiter's motion to stay is premature; the IPR has not been instituted therefore a stay is not warranted.

Jupiter's IPR petition is pending decision on institution. VPR's preliminary response is due April 14, 2022. The PTAB then has three (3) months to decide whether to institute. The PTAB is expected to issue a ruling on institution in July of 2022.  Jupiter's motion for a stay is premature.

The "mere fact that a petition for inter partes review was filed" does not justify a

stay. *CANVS Corp. v. United States*, 118 Fed. Cl. 587, 591-592 (2014). "The 'universal practice' in…most district courts, is to deny a motion for stay when the Board has not yet acted on a petition for IPR." *Trover Grp., Inc. v. Dedicated Micros USA,* No. 2:13-CV-1047-WCB, 2015 WL 1069179, at * 6 (E.D. Tex. Mar. 11, 2015)(stay denied as premature and prior to institution and collecting cases); *Peloton Interactive, Inc. v. Flywheel Sports, Inc.*, No. 218CV00390RWSRSP, 2019 WL 3826051, at *2 (E.D. Tex. Aug. 14, 2019)(stay denied because the PTAB has not instituted IPR proceedings for all asserted patents and stay would cause undue prejudice to plaintiff); *National Products Inc. v. Gamber-Johnson LLC*, 2021 WL 4168335, *1–*2 (W.D. Wis. 2021)("[s]tay requests made before the PTO has granted an IPR petition are premature."); *Unwired Planet, LLC v. Square, Inc.*, 2014 WL 4966033 (D. Nev. 2014)(stay denied during claim construction, before institution); *Automatic Mfg. Systems, Inc. v. Primera Technology, Inc.*, 2013 WL 1969247, *3 (M.D. Fla. 2013) (stay denied as premature until PTAB decides whether to institute IPR); *Rensselaer Polytechnic Institute v. Apple Inc.*, 2014 WL 201965 (N.D.N.Y. 2014) (same); *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, 2015 WL 2454296 (E.D. Va. 2015) (same); *Sierra Pac. Indus. v. Kolbe & Kolbe Millwork Co.*, 2019 WL 1924836 (W.D. Wis. Apr. 30, 2019) ("a stay based solely on the filing of an IPR petition is generally premature at best".) [2]

The "Director may not authorize an inter partes review to be instituted unless ... the information presented in the petition ... shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a); *Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2140

---

[2]Courts frequently deny motions to stay after a decision to institute has been granted. See e.g. *ImageVision.Net, Inc. v. Internet Payment Exchange, Inc.*, 2013 WL 1743854, *2 (D. Del. 2013) (denying stay, applying traditional three-factor test to determine that stay is not appropriate); *Nexans Inc. v. Belden Inc.*, 2014 WL 651913 (D. Del. 2014) (recommending denial of motion for stay through completion of already-granted IPR where PTAB determination will occur very early in discovery phase of case); *Endotach LLC v. Cook Medical Inc.*, 2014 WL 301498 (S.D. Ind. 2014) (stay denied where it would give a defendant a tactical advantage).

(2016) ("[T]he agency's decision to deny a petition is a matter committed to the Patent Office's discretion.")(internal citations omitted).

Jupiter's motion, filed before institution, is premature.

### 1. Jupiter's IPR petition is time-barred under 35 U.S.C. §315(b)

"An inter partes review may not be instituted if the petition requesting the proceeding is filed more than 1 year after the date on which the petitioner, real party in interest, or privy of the petitioner is served with a complaint alleging infringement of the patent." 35 U.S.C. § 315(b).

The date of service of the complaint in this case is the trigger date. Section 315(b)'s "time bar is implicated once a party receives notice through official delivery of a complaint in a civil action, irrespective of subsequent events." *Click-To-Call Techs., LP v. Ingenio, Inc., YellowPages.com, LLC*, 899 F.3d 1321, 1330 (Fed. Cir. 2018), vacated on other grounds, *Thryv, Inc v. Click-To-Call Techs.*, LP, 140 S. Ct. 1367 (2020). Congress chose the date of service because service of a complaint is the seminal notice-conferring event in a district court action. *Click-to-Call*, 899 F.3d at 1332. At least one Board decision has interpreted the phrase "served with a complaint" in precisely this manner: "the legally-charged text 'served with a complaint' is used ordinarily in connection with the official delivery of a complaint in a civil action." *Amkor Tech., Inc. v. Tessera, Inc.,* No. IPR2013-00242, Paper No. 98, slip op. at 9, 2014 WL 2864151 (P.T.A.B. Jan. 31, 2014).

Jupiter was served with the complaint by VPR on November 19, 2020 along with the request for waiver. Jupiter's counsel executed the waiver on December 15, 2020. The waiver states that Jupiter: (1) received a copy of the complaint, (2) waive any objections to the absence of a summons or of service, and (3) cannot object to the absence of a summons or of service. The waiver was returned to VPR. Jupiter's filing of the IPR petition more than one year later on December 21, 2021 was five (5) days late.

VPR anticipates Jupiter will argue that it was not "served" until December 21, 2020, the date VPR filed the waiver of service with the Court (ECF 9), and therefore

Jupiter's IPR filing one year later was timely. However, Jupiter is wrong and makes a mockery of the plain language of the statute requiring a petitioner to file within one year of service of a complaint alleging infringement.

The plain meaning of the phrase "served with a complaint" is "presented with a complaint" or "delivered a complaint" in a manner prescribed by law. Black's Law Dictionary defines "serve" as "[t]o make legal delivery of (a notice or process)" or "[t]o present (a person) with a notice or process as required by law," and defines "service" as "[t]he formal delivery of a writ, summons, or other legal process[.]" Black's Law Dictionary 1491 (9th ed. 2009).

"[T]he core function of service is to supply notice of the pendency of a legal action, in a manner and at a time that affords the defendant a fair opportunity to answer the complaint and present defenses and objections." *Henderson v. United States*, 517 U.S. 654, 672 (1996).

In this case, the complaint was presented and delivered to Jupiter more than one year before December 21, 2021. Therefore, under the plain and unambiguous language of the statute, Jupiter filed too late.

>    **2.     The IPR petition was unreasonably delayed and is being used as a strategic weapon to derail this litigation.**

Jupiter unreasonably delayed its IPR filing. Jupiter waited until the very last second to gain tactical advantage. There is no explanation for Jupiter's unjustifiable delay other than tactical gamesmanship. Jupiter failed to timely disclose in this case three of the four prior art references cited in the IPR. Jupiter waited until the last possible moment to file its IPR and disclose its invalidity analysis in this dispute.

Jupiter is using the IPR procedure "as a tool for harassment or litigation gamesmanship." *Johnson Health Tech. Co. v. Icon Health & Fitness, Inc.*, IPR2014-01242, Paper 16 (PTAB Feb. 11, 2015) (institution denied). Jupiter violated the rules on patent lawsuit disclosures that "require both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed

with diligence in amending those contentions when new information comes to light in the course of discovery." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc*., 467 F.3d 1355, 1365–66 (Fed. Cir. 2006). Patent litigation "require[s] parties to crystallize their theories of the case early in litigation and to adhere to those theories once they have been disclosed." *Id*. at 1366 n.12. Instead of disclosing its invalidity claims in this case as required, Jupiter is using its later filed IPR to advance new theories of invalidity.

Jupiter's late disclosure of relevant prior art was never explained or justified. Jupiter has not demonstrated diligence. *West v. Jewelry Innovations, Inc*., No. C 07–1812 JF (HRL), 2008 WL 4532558, at *3 (N.D. Cal. Oct. 8, 2008) (finding that the defendant did not establish diligence of its prior art search because it did "not provide any information about when or why it began the inquiries…"); *Streak Prods., Inc. v. Antec, Inc*., No. C09–04255 RS (HRL), 2010 WL 3515752, at *2 (N.D. Cal. Sept. 8, 2010) (requiring defendant to submit declarations describing their prior art search).

Jupiter's unjustified delay in filing its IPR petition alone is sufficient basis for denial. *See, e.g., Realtime Data LLC v. Actian Coporation*, No. 6:15-CV-463-RWS-JDL, 2016 WL 3277259, at *3 (E.D. Tex. June 14, 2016) ("Defendants waited between seven and eleven months to file their IPR petitions…which demonstrates a lack of diligence on the part of the Defendants, and they have not attempted to provide an explanation for this unjustifiable delay.")[3]

---

[3]*TruePosition, Inc., v. Polaris Wireless, Inc.*, No. CV 12-646-RGA/MPT, 2013 WL 5701529, *6 (D. Del. Oct. 21, 2013), report and recommendation adopted, No. CV 12-646-RGA, 2013 WL 6020798 (D. Del. Nov. 12, 2013) (finding that filing IPR petitions close to the statutory deadline "may suggest an unfair tactical advantage or dilatory motive"); *Pragmatus Mobile, LLC v. Amazon.com, Inc.*, No. CV 14-436-LPS, 2015 WL 3799433, at *1 (D. Del. June 17, 2015) ("The timing of Moving Defendants' filing suggests they may be seeking a tactical advantage, given they were aware of the prior art asserted in their IPR petition many months before filing the petition just three days before the statutory deadline."); *TPK Touch Solutions, Inc v. Wintek Electro-Optics Corporation*, 2013 WL 6021324 (N.D. Cal. 2013) (noting lack of diligence by patent challenger in requesting IPR).

11

**B. A stay will unduly prejudice VPR and present a clear tactical disadvantage to VPR.**

VPR is a practicing entity.[4] VPR is a direct competitor of Jupiter. Both companies sell vaping devices utilizing the technology of the '622 Patent. "Courts routinely deny requests for stay during the pendency of PTO proceedings where the parties are direct competitors." *Everlight Elecs. Co. v. Nichia Corp.,* No. 12–cv–11758, 2013 WL 1821512, *8 (E.D. Mich. Apr. 30, 2013).

Infringement among competitors causes harm in the marketplace that is not compensable by readily calculable money damages. *See Acumed LLC v. Stryker Corp.,* 551 F.3d 1323, 1327–28 (Fed. Cir. 2008). Staying this case will prejudice VPR's timely enforcement of its right to exclude. *Tesco Corp. v. Weatherford Int'l, Inc.,* 599 F. Supp. 2d 848, 851 (S.D. Tex. 2009); *ADA Solutions, Inc. v. Engineered Plastics, Inc.,* 826 F. Supp. 2d 348, 351 (D. Mass. 2011)("prejudice [to the patentee] is heightened when parties to litigation are direct competitors; in such cases, courts presume that a stay will prejudice the non-movant."); *Davol, Inc. v. Atrium Medical Corp.,* 2013 WL 3013343, at *3 (Plaintiff in direct competition with petitioner "likely faces a greater risk of surrendering market share."); *Output Technology Corp. v. Dataproducts Corp.,* 1991 WL 332547 (W.D. Wash. 1991) (denying motion to stay where patentee's market would be harmed if the accused infringer continued to infringe during the stay).

Jupiter points to VPR not filing for a preliminary injunction (ECF 30, p. 14), however, on a "motion to stay, the Court will not hold against [the patentee] its decision to spare the parties more litigation [in the form of a motion for preliminary injunction]." *Avago Techs. Fiber IP Pte. Ltd. v. IPtronics Inc.,* No. 10-CV-02863-EJD, 2011 WL 3267768, at *6 (N.D. Cal. July 28, 2011*)*. The fact that Plaintiff did not seek a preliminary injunction does not mean that it would not suffer prejudicial harm from its competitor's market activity during a lengthy delay in the case. *Universal Elecs., Inc. v. Universal Remote Control, Inc.,* 943 F. Supp. 2d 1028, 1034 (C.D. Cal. 2013).

---

[4] Frija Decl., ¶¶ 2-5.

The tactical advantages to Jupiter from a stay are enormous. From institution until final decision, IPRs take eighteen months.[5] Appeals will add another year and a half at least. By the time appeals are exhausted, three or more years will pass. *Network-1 Sec. Sols., Inc. v. Alcatel-Lucent USA Inc.*, 2015 WL 11439060, at *5, 5 n.8 (E.D. Tex. Jan. 5, 2015) (additional delay imposed by appeals is considerable and maintaining a stay through appeals is costly). Jupiter bears the burden to show that resources would be saved by awaiting *inter partes* review. Jupiter cannot meet its burden. *Fujitsu Ltd. v. Netgear, Inc.,* 2008 WL 2540602 (W.D.Wis. Apr. 4, 2008) ("[T]he interest of justice is served by litigating a suit 'where the litigants are more likely to receive a speedy trial.'"(quoting *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 221 (7th Cir.1986))); *Hy Cite Corp. v. Regal Ware, Inc.*, 2010 WL 2079866 (W.D.Wis. May 19, 2010) ("…plaintiff would be forced to wait somewhere around nine months from filing simply to begin this case, a wait as long as sole cases take to be tried in this court.").

## C. A Stay will not Simplify the Issues

Since the IPR is unlikely to be instituted for the reasons mentioned above, a stay would not resolve or simplify the issues. Even if the IPR is instituted, "'to truly simplify the issues ... the outcome of the reexamination must finally resolve all issues in the litigation.'" *Everlight Elecs.*, 2013 WL 1821512, at *9(quoting, *Esco. Corp. v. Berkeley Forge & Tool, Inc.*, No. 09–1635, 2009 WL 3078463, *2–4 (N.D.Cal. Sept.28, 2009)). Substantial questions of invalidity will remain for adjudication by this court, and the case will not be simplified.

The court will have to construe the terms and rule on the validity of the '622 Patent. This case is as simple as patent infringement cases get. A single patent with a handful of claims is at issue. (ECF 1-1). The '622 patent is so simple that Jupiter and

---

[5] 35 U.S.C. § 316 requires that the final determination in an inter partes review be issued not later than 1 year after the date on which the Director notices the institution of a review under this chapter, except that the Director may, for good cause shown, extend the 1-year period by not more than 6 months, and may adjust the time periods in this paragraph in the case of joinder under section 315(c).

VPR agreed on construction of claim terms. No claim construction hearing is needed, and the IPR will not simplify any issues related to claim construction or infringement.

Infringement can be determined on summary judgment using the parties' agreed upon claim construction. Six claims are at issue. Jupiter sells 21 infringing products, but they all function in the same way and all infringe in the identical fashion. The infringement case will be easily determined on the merits and will not be simplified by the IPR.

Meanwhile, Jupiter's IPR cannot simplify the issues it raised in this court on invalidity. The IPR is limited to questions of validity under §102 and §103 and will not address other enforceability issues such as §112, prior inventor, public use, or inequitable conduct issues. [6]

Jupiter's IPR is unlikely to invalidate all claims-at-issue, and the parties will find themselves in the same position they are now in after the IPR is concluded. In 2019, only 36% of instituted petition resulted in invalidation of all asserted claims.[7] Accordingly, even if the IPR is instituted, it will not "resolve all issues in the litigation," and substantial questions of invalidity will remain for adjudication by this court. *Everlight Elecs.*, 2013 WL 1821512, at *9. The case will not be simplified.

Jupiter should not be allowed to reap the benefits of its own unreasonable delay in raising new prior art and filing the IPR.

---

[6] *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988) (The "PTO and the courts employ different standards of proof when considering validity, and the courts, unlike the PTO during a reexamination of patent claims, are not limited to review of prior art patents or printed publications"); *Gladish v. Tyco Toys, Inc.*, 1993 WL 625509 (E.D. Cal. 1993) (denying stay in part because reexamination could not address issues of prior public use or prior inventor); *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 6:12-CV-1727-ORL-37, 2013 WL 1969247, at *3 (M.D. Fla. May 13, 2013)("Even if the USPTO decides to initiate a review, the law makes clear that the review itself is limited to anticipation and obviousness, which are only two of the many, many defenses to patent infringement.")

[7] *Avanos Med. Sales, LLC v. Medtronic Sofamor Danek USA, Inc.*, No. 219CV02754JMPTMP, 2020 WL 7865959, at *3 (W.D. Tenn. Nov. 24, 2020)

14

**D. This case has progressed significantly towards trial**

The first rule in the Federal Rules of Civil Procedure states that the rest of the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.[8]

Courts regularly deny stay requests when, as here, the litigation has progressed significantly toward trial. See, e.g., *Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, No. A–12–CA–773–SS, 2013 WL 6097571 (W.D. Tex. June 7, 2013).[9]

The parties have completed substantial discovery. VPR served its first set of discover request in February 2021 and supplement requests on June 1, 2021, and the parties have provided multiple rounds of document production. On July 27, 2021, VPR took the deposition of Jupiter's Corporate representative, Jordan Walker, Director of Engineering at Jupiter Research, and Jupiter noticed depositions of VPR's corporate representative and the '622 Patent inventor for February, 2022.  (Lehkt Decl. ¶¶ 7-10)

Claim Constructions is complete. It would be wasteful, inefficient, and counter to the first rule of civil procedure to stay the litigation now. *See* Fed. R. Civ. P. 1.  It will take another six (6) months before PTAB makes a decision on whether or not to institute. It will take another 12 months after institution until the IPR is expected to be completed.[10] This case and controversy can be resolved well before then if the case

---

[8] *Comcast Cable Commc'ns Corp., LLC v. Finisar Corp.*, No. C 06–04206 WHA, 2007 WL 1052883, at *1 (N.D. Cal. Apr. 5, 2007).("If litigation were stayed every time a claim in suit undergoes reexamination, federal infringement actions would be dogged by fits and starts. Federal court calendars should not be hijacked in this manner.")

[9] *Xerox*, 69 F.Supp.2d at 407 (denying stay when "[s]ubstantial time and expense ha[d] been invested in th[e] litigation by the parties and the Court"); *Universal Elecs.*, 943 F.Supp.2d at 1030–32 (denying stay after claim construction where "Defendant did not file its inter partes review petitions until almost a year after being served with the complaint"). *TruePosition, Inc., v. Polaris Wireless, Inc.*, 2013 WL 5701529 (D. Del. 2013), report and recommendation adopted, 2013 WL 6020798 (D. Del. 2013) (recommending denial of stay where claim construction hearing and substantial discovery has already occurred).

[10] 35 U.S.C. § 316 requires that the final determination in an inter partes review be issued

proceeds.

"[T]he Parties have already invested substantial effort and resources during discovery and in preparing claim construction briefing. These circumstances weigh against staying this case." *Intellectual Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2017 WL 4812434, at *2 (E.D. Tex. Oct. 24, 2017). After considering the prejudice to VPR and the resources already expanded on this case, the Court should deny the motion to stay a proceeding that is already in this late stage because the request is inappropriate.

**E. The IPR petition fails to provide prior art that raises a reasonable likelihood that Jupiter would prevail with respect to at least one of the challenged claims, and will not be instituted on the merits**

The IPR petition filed by Jupiter asserts four prior art devices: (1) United States Patent No. 6,234,167, titled *Aerosol Generator and Methods of Making and Using an Aerosol Generator* ("Cox"); (2) United States Patent No. 8,375,957, titled *Electronic Cigarette* ("Hon"); (3) Chinese Patent Application Publication No. CN 201104488Y ("Zhu"); and (4) International Publication No. WO 98/171131 ("Fleischhauer").

Among other deficiencies, the cited prior art fails to disclose the "Single Chip Micyoco" of the present invention. One advantage of the '622 Patent, is the use of single chip microcontroller that both receives an input signal from the airflow sensor and provides an output signal that directly controls the heating element (an in-turn the vaporization process). As required in Claim 13, "the Single Chip Micyoco receives the signal from the electric airflow sensor, instructs the electric power source to send an electric current to the electronic atomizer, and a time period and a magnitude of the electric current." '622 Patent, Claim 13.

---

not later than 1 year after the date on which the Director notices the institution of a review under this chapter, except that the Director may, for good cause shown, extend the 1-year period by not more than 6 months, and may adjust the time periods in this paragraph in the case of joinder under section 315(c). 35 U.S.C. § 316(a)(11) (2014); 37 C.F.R. § 42.100(c) (2016).

**1.    Cox discloses a "control device" that operates in conjunction with a separate timer, remote control, and a user-actuated button**

Cox does not disclose a Single Chip Micyoco.  Cox discloses a "control device" whose components are not disclosed in the Cox specification.  Nothing in the Cox specification indicates that the "control device" is a Single Chip Micyoco (or microcontroller).  Additionally, Cox explicitly teaches away from a single-chip microcontroller, and teaches the use of additional controls, including a timer, remote control, and a user-actuated button.  (Cox,  Fig. 2).

Further, the "Control Device" of Cox does not determine the magnitude and duration of the electric current.  The magnitude of the vaporization in Cox is instead controlled by pressure differentials, unrelated to the Control Device. See Cox, Col. 12, lns. 4-9 ("...the amount of aerosol delivered (d), or the aerosol delivery rate D multiplied by the time that the aerosol is delivered, is understood to be substantially linearly related to the pressure drop (p) of the liquid material through the tube 27...").

Accordingly, Cox fails to disclose at least one required element of Claim 13 of the '622 patent, and therefore fails to raise a reasonable likelihood that the challenged claim will be narrowed.

**2.    Hon discloses a microcontroller that operates in conjunction with a separate MOFSET electric circuit board**

Hon does not disclose a Single Chip Micyoco.  To the contrary, Hon explicitly teaches away from a single-chip microcontroller, and teaches the use of an additional "MOFSET electric circuit board," stating, for example:

> …under the action of suction, pressure difference distorts to drive the switch spring (212) and sensor (207), thus invoking MCU (206) and MOSFET electric circuit board (205). At this moment, the indicators (202) are lit gradually; the lithium ion battery (203) electrifies the heating body (305) inside the atomizer (307) through MOSFET electric circuit board (205) as well as the internal and external thread electrodes (302, 209), so that the heating body (305) inside the atomizer (307) produces heat.

Hon, col. 5, ln. 11-20.

Accordingly, Hon fails to disclose at least one required element of Claim 13 of the '622 patent, and therefore fails to raise a reasonable likelihood that the challenged claim will be narrowed.

### 3. Zhu discloses the use of a "pressure chamber" and an integrated circuit that operates in conjunction with a separate MOFSET

Zhu does not disclose a Single Chip Micyoco or an airflow sensor as required by all claims of the '622 Patent.

Zhu does not employ an airflow sensor, but instead utilizes a "negative pressure chamber 5 and [] secondary air pressure holding chamber 7" to detect suction by a user. (Zhu, p. 5, ¶ 1). Additionally, Zhu teaches away from a single-chip microcontroller, and teaches the use of an additional "MOFSET" in conjunction with integrated circuit (3). (Zhu, Figure 7).

Accordingly, Zhu fails to disclose at least two required elements of Claim 13 of the '622 patent, and therefore fails to raise a reasonable likelihood that the challenged claim will be narrowed.

### 4. Fleischhauer is not an electronic cigarette, and fails to disclose the atomizer, and single-chip microcontroller of the '622 patent

As an initial note, Fleischhauer is not an electronic cigarette, but simply an electric heating device to be used with conventional cigarettes, and accordingly does not have an "electronic atomizer" as required by all claims of the '622 patent.

Fleischhauer does not disclose a Single Chip Micyoco. To the contrary, Fleischhauer explicitly teaches away from a single-chip microcontroller, and teaches the use of a "cigarette detector", wherein the "the cigarette detector 53 provides a signal to the circuitry 41 which, in turn, responsively provides a signal to the indicator 51." Fleischhauer, p. 9, ln. 8-20. Fleischhauer provides a controller that operates in response to detecting the presence of a cigarette. Additionally, Fleischhauer discloses a "logic circuit" that comprises a microcontroller and additional controls such as "timing network

197." Fleischhauer, p. 15, ln. 21-28.

Accordingly, Fleischhauer fails to disclose at least two required elements of Claim 13 of the '622 patent, and therefore fails to raise a reasonable likelihood that the challenged claim will be narrowed.

## IV.    CONCLUSION

Under the totality of the circumstances a stay is unwarranted. All the factors weigh against staying the case. Jupiter's motion is, at best, premature. Accordingly, this Court should deny the stay, and enter the claim construction order adopting the agreed upon proposed construction by the parties (ECF 29-1). Once the order is issued, VPR will file a motion for summary judgment on infringement.


Dated:   January 24, 2022                    Respectfully submitted,

                                             */s/ Eliezer Lekht*
                                             Eliezer Lekht

1

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on January 24, 2022, a true and correct copy of the foregoing document was served by electronic mail by the Court's CM/ECF System to all parties listed below on the Service List.

*/s/ Eliezer Lekht*
ELIEZER LEKHT

Mr. Anthony Meola
Mr. Jeffrey J. Johnson
Schmeiser, Olsen & Watts LLP
18 East University Drive
Suite 101
Mesa, AZ 85201
AZ@IPLawUSA.com,
litigation@iplawusa.com
ameola@iplawusa.com
jjohnson@iplawusa.com
Attorneys for Jupiter Research, LLC

**SRIPLAW**
CALIFORNIA ◆ GEORGIA ◆ FLORIDA ◆ TENNESSEE ◆ NEW YORK

20